UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTONIQUE LYDIA GRONER,<br><br>                    Petitioner,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security Administration,<br><br>                    Respondent. | Case No. 3:19-CV-00288-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Antonique Lydia Groner's Petition for Review of the final decision of the Commissioner of Social Security denying her application for supplemental security income, filed on July 23, 2019. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the ALJ's decision.[1]

## PROCEDURAL AND FACTUAL HISTORY

On September 4, 2015, Petitioner protectively filed an application for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is the named Respondent. 42 U.S.C. § 405(g).

disability beginning on February 17, 2013. At the time of the alleged disability onset date, Petitioner was 18 years of age. She has a high school education with no relevant prior work experience. Petitioner claims she is unable to work due to her physical and mental impairments of: obesity, intellectual disorder, depressive disorder, anxiety disorder, and personality disorder.

Petitioner's application was denied initially and on reconsideration. A hearing was conducted on July 10, 2018, before Administrative Law Judge (ALJ) Glenn G. Meyers. After hearing testimony from Petitioner and vocational expert Mark A. Harrington, the ALJ issued an unfavorable decision finding Petitioner not disabled on July 31, 2018. (AR 13-26.) Petitioner's request for review by the Appeals Council was denied on May 24, 2019, making the ALJ's decision final. *See* 42 U.S.C. § 405(h).

Petitioner timely filed this action seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g). Petitioner challenges that the ALJ erred by: 1) rejecting the medical opinions of the examining psychologists; 2) rejecting Petitioner's subjective complaints; 3) failing to consider certain lay testimony; and 4) failing to conduct an adequate analysis at step three and step five. (Dkt. 21.)[2]

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal

---

[2] Petitioner does not challenge the ALJ's determinations regarding her physical impairments. Accordingly, the Court addresses only Petitioner's arguments concerning the ALJ's consideration of her mental impairments.

error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found

Petitioner had not engaged in substantial gainful activity since her alleged onset date. The ALJ found at step two that Petitioner had the following medically determinable, severe impairments: obesity, intellectual disorder, depressive disorder, anxiety disorder, and personality disorder. (AR 15.) At step three, the ALJ concluded Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

The ALJ next assessed the limitations caused by Petitioner's impairments and determined she retained the Residual Functional Capacity (RFC) to perform light work with some physical limitations and the following nonexternal mental limitations: can engage in unskilled, repetitive, and routine tasks in two-hour increments; is capable of working in proximity but not in coordination with coworkers; can have occasional contact with supervisors; and should not have contact with the public. (AR 19.) The ALJ further found Petitioner will be off task up to ten percent of her work shifts and will be absent from work one day per month.

At step four, the ALJ determined Petitioner had no past relevant work. Therefore, the ALJ moved to step five where he found that, based on the Petitioner's age, education, work experience, RFC and the testimony of the vocational expert, Petitioner could perform the requirements of other work existing in significant numbers in the national economy such as production assembler, cafeteria attendant, and bottle packer. (AR 25.) Accordingly, the ALJ determined Petitioner not disabled.

**MEMORANDUM DECISION AND ORDER -** 4

## ISSUES PRESENTED

Petitioner raises the following issues as grounds for reversal and remand:

1.　Whether the ALJ erred by rejecting the medical opinions of the examining psychologists;

2.　Whether the ALJ erred by rejecting Petitioner's subjective complaints;

3.　Whether the ALJ erred by failing to consider lay testimony; and

4.　Whether the ALJ erred by failing to conduct an adequate analysis at step three and step five.

## DISCUSSION

**1.　The ALJ Erred by Rejecting the Opinions of the Examining Psychologists.**

Petitioner argues the ALJ failed to properly weigh the opinions of examining psychologists Thomas Genthe and Rebecca Alexander. (Dkt. 21.) Respondent contends the ALJ reasonably evaluated the medical opinions. (Dkt. 22.) For the reasons that follow, the Court finds the ALJ's assessment of Drs. Genthe and Alexander's opinions is not supported by substantial evidence.

### A.　Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*, 759 F.3d at

1012. In evaluating a medical opinion, the ALJ considers: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Orn*, 495 F.3d at 631-32.[3]

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quotation omitted). Where the opinion of a treating or examining physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1012.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). An ALJ errs by rejecting "a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his or her]

---

[3] The opinion evidence is evaluated pursuant to 20 C.F.R. § 404.1527 where, as here, Petitioner's claim was filed before March 27, 2017.

conclusion." *Id.* at 1012–13.

**B.    Dr. Genthe's Opinion**

On July 16, 2015, Dr. Genthe conducted a state agency psychological evaluation. (AR 410-420.) Cognitively, Dr. Genthe reported test results placing Petitioner in the borderline range for intellectual functioning and general perceptual reasoning, and in the low average range for: verbal comprehension, ability to sustain attention and concentrate, and processing simple or routine visual material without making errors. (AR 413-417.)

From the psychological perspective, Dr. Genthe diagnosed Petitioner with specified depressive disorder, mild; specific anxiety disorder, with social phobia features; specified personality disorder, with mixed features; and borderline intellectual functioning. (AR 412.) Notably, Dr. Genthe concluded Petitioner's "psychological symptoms do not appear to have considerably impacted her daily activities and level of functioning, necessary to move forward and pursue gainful employment or continue her education." (AR 413.) Dr. Genthe further stated the Petitioner would benefit from vocational training and recommended treatment options to address her mental health symptoms but noted that "[s]uch services should not prevent her from pursuing everyday work related tasks or activities commensurate with her level of education and training." (AR 413.)

In assessing Petitioner's work related abilities, Dr. Genthe opined that Petitioner has marked limitations in the areas of: ability to understand, remember, and persist in tasks by following very short and simple instructions; perform activities within a schedule; learn new tasks; perform routine tasks without special supervision; make

simple work-related decisions; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms. (AR 412-413.) Dr. Genthe found Petitioner has severe impairments in her ability to understand, remember, and persist in tasks following detailed instructions; and ability to adapt to changes in a routine work setting. (AR 412-413.) Dr. Genthe rated the overall level of severity of Petitioner's mental impairments to be moderate.

The ALJ assigned minimal weight to Dr. Genthe's assessment, concluding Dr. Genthe did not have an accurate assessment of Petitioner's psychological functioning for two reasons. (AR 23.) First, the ALJ questioned the validity of Dr. Genthe's findings, surmising that Dr. Genthe did not "actually believe" Petitioner was incapable of employment and that Petitioner's performance during testing was unreliable and caused variations in Dr. Genthe's test results. Second, the ALJ found the evidence in the record was inconsistent with Dr. Genthe's opinion, namely: that Petitioner did not report depression or psychological limitations to treatment providers following Dr. Genthe's evaluation; the records showed improvement in Petitioner's mental health symptoms; and Petitioner met the requirements to graduate from high school in 2013.

Petitioner argues the ALJ's evaluation is erroneous, maintaining that Dr. Genthe appropriately addressed the possibility the Petitioner may have exaggerated her symptoms when making his findings and that Dr. Genthe's opinion of Petitioner's limitations is consistent with the relevant records. (Dkt. 21.) Petitioner also challenges the ALJ's reliance on the opinion of the non-examining state agency psychological

consultant Dr. Thomas Clifford as a basis for discrediting Dr. Genthe's opinion.

Respondent maintains the ALJ properly discounted Dr. Genthe's opinion based on its inconsistency with the unremarkable examination findings in the record and the longitudinal treatment records. (Dkt. 22.) However, the Court finds the ALJ's bases for rejecting Dr. Genthe's opinion are not supported by substantial evidence.

### i.    Validity of Dr. Genthe's Opinion

The ALJ discredited Dr. Genthe's opinion as an inaccurate assessment of Petitioner's impairments, questioning the validity of Dr. Genthe's findings and Petitioner's symptom statements. (AR 23.)

The ALJ found Dr. Genthe's "assessment of marked limitations was a ploy for [Petitioner] to obtain state assistance and/or access to treatment." (AR 23.) The ALJ pointed to Dr. Genthe's statements that Petitioner should pursue vocational training to obtain suitable job skills and that Petitioner's "mild" psychological symptoms did not impact her daily activities and level of functioning such that she was incapable of employment.

The Court finds the ALJ's speculation that Dr. Genthe's motivation for assigning marked limitations was "a ploy," is unsupported in the record and not a proper basis for discrediting the opinion. The ALJ erred in relying on this as a basis for rejecting Dr. Genthe's opinion.

However, the Court notes Dr. Genthe's evaluation appears to contain an internal inconsistency. Dr. Genthe's assessment that Petitioner retains mostly marked limitations in basic work activities appears to conflict with his characterization of Petitioner's

depression and anxiety as "mild" and his conclusion that Petitioner's "psychological symptoms do not appear to have considerably impacted her daily activities and level of functioning necessary to move forward and pursue gainful employment." (AR 412-413.) This internal inconsistency in Dr. Genthe's evaluation may be a basis for rejecting the opinion. The ALJ, however, did not clearly rely on this apparent discrepancy in Dr. Genthe's evaluation as a basis for rejecting the opinion. Instead, the ALJ concluded Dr. Genthe's assessment was a "ploy" to help Petitioner obtain state assistance and access to treatment. (AR 23.) On remand, the ALJ should consider whether Dr. Genthe's evaluation is internally inconsistent and, if so, whether and to what extent any such discrepancy warrants discrediting Dr. Genthe's opinion.

The Court finds variations in the psychometric testing are also not a substantial basis for discrediting Dr. Genthe's opinion. The ALJ attributes the differences in Dr. Genthe's test results to his distrust of Petitioner's symptom reports and responses during testing -- pointing to statements in Dr. Genthe's evaluation that Petitioner "tended to endorse items that present an unfavorable impression" and that she "may exaggerate complaints and problems." (AR 23.) The ALJ discredits Dr. Genthe's opinion, because of his reliance on Petitioner's "exaggerated" symptom complaints. (AR 23.) Petitioner challenges this as a basis for rejecting the opinion, arguing Dr. Genthe's findings are based on objective measures irrespective of the possibility that Petitioner may have exaggerated her symptoms. (Dkt. 21.) The Court agrees.

The ALJ may not reject a medical source opinion because it is based on the Petitioner's self-reports when the medical source analyzes those self-reports using

objective measures such as a clinical interview and mental status exam. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Clinical interviews and mental status evaluations are "objective measures and cannot be discounted as a 'self-report.'" *Id.* Thus, where a mental health provider relies in part on the Petitioner's self-reported symptoms, but also relies on objective procedures and tests, it is error for the ALJ to reject the provider's opinion based on a determination that the claimant's self-reporting is unreliable. *Id.*

Here, Dr. Genthe appropriately recognized that Petitioner may exaggerate her psychological symptoms, but based his findings and evaluation on a comprehensive mental status examination and objective testing measures. (AR 418-419.) Dr. Genthe considered the possibility that Petitioner may have overstated her symptoms in his assessment, discussing at length the validity of the test results, and accounted for those variations in his evaluation. (AR 418-419.) The Court therefore finds the ALJ erred in rejecting Dr. Genthe's opinion on this basis. *Buck*, 869 F.3d at 1049.

### ii.      Conflicting Evidence in the Record

The ALJ concluded Dr. Genthe's opinion was inconsistent with other evidence in the record. (AR 23.) Namely, records showing improvement of Petitioner's mental health symptoms following Dr. Genthe's evaluation.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. The ALJ's conclusion will be upheld where the evidence is susceptible to more than one rational conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

decision, the ALJ's conclusion must be upheld.").

Here, the ALJ cites certain portions of the record that he contends are inconsistent with Dr. Genthe's opinion. (AR 23.) The ALJ concludes the records show a "general lack of depression or psychological limitations as reported to treatment providers since August 2015," after Dr. Genthe's evaluation. (AR 23) (citing AR 455, 576-77) (Petitioner reports some ongoing symptoms of depression and anxiety but improved and stable mood); (AR 639-640, 646-647) (Petitioner self-reports few or no psychiatric symptoms.); and (AR 722) (staff reports Petitioner "overall doing well" and Petitioner describes moods as "good today" and denies current problematic depressed, irritable, or anxious symptoms.)). Further, the ALJ noted Petitioner had met the requirements to graduate from high school in 2013. (AR 23) (citing AR 367.)

However, treatment records must be viewed in light of the overall diagnostic record. *See Holohan*, 246 F.3d at 1205; *Ryan v. Comm'r Soc. Sec*., 528 F.3d 1194, 1200–01 (9th Cir. 2008). "Occasional symptom-free periods ... are not inconsistent with disability." *Lester*, 81 F.3d at 833. The fact that a person suffering from depression makes some improvement "does not mean that the person's impairment [] no longer seriously affect[s] [his] ability to function in a workplace." *Holohan*, 246 F.3d at 1205; *see also Ryan*, 528 F.3d at 1200–01.

When read as a whole, the medical records here reveal Petitioner had continuing and persistent symptoms of depression, anxiety, and low cognition stemming from her psychological impairments. (AR 429-433, 435, 445, 449, 560, 574-577, 603-604, 680, 706, 748.) While the records indicate some improvement following certain periods of

treatment and resumption of medication, Petitioner continued to have ongoing symptoms from her psychological impairments, particularly when exposed to situations that overwhelmed her and triggered her anxiety – such as when she attempted to work as a caregiver for her mother.

Likewise, Petitioner's graduation from high school does not conflict with Dr. Genthe's evaluation. While true, the record cited by the ALJ is a general education teacher report from 2013 stating Petitioner had "missed a significant amount of school…due to mental health concerns," Petitioner's progress has been limited by her absences, and that Petitioner "struggles to complete simple tasks and questions," "does not work well independently," and "struggles to remember simple steps to accomplish a task." (AR 367.) The record indicates Petitioner decided to attend one additional year of school to make her schedule more manageable and less stressful and reduce her anxiety, so that she could complete the missing items needed for graduation. Contrary to the ALJ's conclusion, Petitioner's education records are consistent with Dr. Genthe's assessment.

Based on the foregoing, the Court finds the record as a whole does not conflict with Dr. Genthe's opinion. The ALJ therefore erred in rejecting Dr. Genthe's evaluation for the reasons stated by the ALJ.

## C.    Dr. Alexander's Opinion

On December 21, 2017, Rebecca Alexander, Ph.D., completed a second state agency psychological evaluation of Petitioner. (AR 774-782.) Dr. Alexander diagnosed Petitioner with borderline intellectual functioning; unspecified depressive disorder,

moderate with borderline personality traits; and unspecified anxiety disorder. (AR 778.) Dr. Alexander assessed Petitioner's cognitive functioning as: (1) ability to understand and remember simple instruction was mildly to moderately impaired; and (2) ability to understand, process, and remember complex multistage instructions and sustain concentration and persist was markedly impaired. Dr. Alexander found Petitioner's ability to interact appropriately with others in the workplace to be markedly impaired.

The ALJ gave minimal weight to Dr. Alexander's assessment. As with Dr. Genthe's opinion, the ALJ concluded Dr. Alexander "was not given an accurate picture of [Petitioner's] psychological functioning." (AR 24.) Pointing to the same records discussed above with regard to Dr. Genthe's opinion, the ALJ concluded that Dr. Alexander's findings based on her observations of Petitioner's presentation during the evaluation were inconsistent with the other medical records from August 2015 to April 2016. (AR 23.) The ALJ also noted a January 2018 physical evaluation reporting Petitioner displayed intact memory and concentration. Further, the ALJ found a disparity between the results of the tests performed by Dr. Genthe and Dr. Alexander. (AR 23-24) (noting Petitioner was "now only able to recall one of three items after a three-minute delay and was unable to perform 'serial 7' subtractions.") The ALJ also concluded Petitioner's daily activities of caring for her mother, doing chores, and playing computer games was at odds with Dr. Alexander's findings. (AR 24.)

The Court finds the ALJ's bases for rejecting Dr. Alexander's opinion are not supported by substantial evidence. As discussed above with regard to Dr. Genthe's evaluation, the ALJ's conclusions concerning the medical records are not supported by

substantial evidence. While some records indicate Petitioner's mental symptoms improved with treatment and medication after August 2015, viewing the entire record as a whole, the records show Petitioner had ongoing symptoms of her mental impairments. The records reflect periods of time when Petitioner reported her mood was "stable" and "good" and she denied current problematic depressed, irritable, or anxious symptoms. (AR 722.) More often, however, the relevant mental health records reveal Petitioner's psychological impairments persisting, consistent with Dr. Alexander's objective observations of Petitioner's presentation during the evaluation. (AR 535, 560, 576-577, 711, 748.)[4] In this regard, the ALJ's finding that the record is inconsistent with Dr. Alexander's evaluation is not supported by substantial evidence.

Likewise, the variations in the test results are insufficient evidence to discredit Dr. Alexander's opinion. There is no indication in the record that Dr. Alexander's testing was invalid. The ALJ appears to attribute the differing results to Petitioner's unreliable performance on the testing. (AR 23.) Dr. Alexander's findings, however, are appropriately based on objective measures and cannot be discounted as a self-report. *Buck*, 869 F.3d at 1049.

As to Petitioner's testimony and statements of her daily activities, the Court finds

---

[4] The neurological findings in the January 2018 physical evaluation are not substantial evidence relevant to Petitioner's mental impairments. (AR 787.) That record is a physical assessment providing only general impressions of Petitioner's neurological condition on that day. It is insufficient to demonstrate a conflict with or overcome the findings in the mental health records.

these also do not provide substantial evidence for discrediting Dr. Alexander's opinion. (AR 24.) An ALJ may discount a treating provider's opinion by noting inconsistencies between the opinion and a petitioner's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion)). Here, however, a holistic review of the record does not reveal an inconsistency between Dr. Alexander's opinions and Petitioner's daily activities.

The record reveals that Petitioner's daily activities consist of low-stress pursuits with no social interaction, spending "pretty much all day" on the internet and doing house chores. The ALJ provides some discussion of Petitioner's daily activities in his decision; noting Petitioner worked as a caregiver for her mother, conducted computer research, wrote songs, and had a "very good" memory for lyrics and music. (AR 17-18, 24.) There is, however, no explanation of how these daily activities conflict with Dr. Alexander's findings or otherwise show Petitioner is able to function in a work setting. Just the opposite, Petitioner's attempt at working as a caregiver for her mother lasted only a very short period of time before Petitioner became overwhelmed by the job. (AR 52-53.) Similarly, Petitioner attempted to work at McDonalds but left after one day because she was unable to keep up with the fast pace. (AR 774.)[5]

---

[5] In other portions of the decision, the ALJ cites records from Petitioner's time in treatment when she played cards and visited with other residence at the facility. (AR 22, 24.) Those portions of

Based on the foregoing, the Court finds there is insufficient evidence to support the ALJ's conclusion that Dr. Alexander's opinion was inconsistent with the record as a whole. The ALJ therefore erred in discrediting Dr. Alexander's assessment.

### D.     Dr. Clifford's Opinion

Petitioner also challenges the ALJ's reliance on the opinion of the state agency psychological consultant, Dr. Clifford, as a basis for discrediting the opinions of examining doctors Genthe and Alexander. (Dkt. 23.) Petitioner argues Dr. Clifford is a non-examining consultant who issued his opinion on December 16, 2015, and, therefore, did not consider any records from 2016 or later. (Dkt. 23 at 3.)

The ALJ gave significant weight to Dr. Clifford's opinion, which the ALJ found to be consistent with the record as a whole. (AR 24.) While the ALJ referenced Dr. Clifford's opinion in his discussion of both Drs. Genthe's and Alexander's evaluations, it does not appear the ALJ relied on Dr. Clifford's opinion as a basis for discrediting their findings. (AR 23.) The Court, therefore, finds no error by the ALJ in this regard. However, to the extent the ALJ's decision is construed as having relied on Dr. Clifford's opinion, the Court finds Dr. Clifford's opinion does not constitute a legitimate basis for

---

the record are insufficient to support the ALJ's conclusion that Petitioner's daily activities were indicative of her ability to engage in social interactions. The records cited by the ALJ are from an isolated period of time during the beginning of Petitioner's treatment. (AR 488, 492, 517, 518, 530.) Later treatment records, however, show Petitioner no longer participating in community meetings and remaining in her room alone. (AR 624, 706, 711.)

rejecting Dr. Genthe's or Dr. Alexander's opinions. *See Lester*, 81 F.3d at 832 ("the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of…the examining psychologist's opinion.").

## 2.   Petitioner's Symptom Testimony

Petitioner challenges the ALJ's rejection of her subjective symptom complaints. (Dkt. 21.) Respondent maintains the ALJ gave valid reasons for discounting Petitioner's symptom testimony. (Dkt. 22.)

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo*, 871 F.3d at 678. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his or her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible."

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

The standard is whether there is substantial evidence to support the ALJ's conclusion. *Trevizo*, 871 F.3d at 674. The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are sound. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

When evaluating a petitioner's subjective symptom testimony, the ALJ must consider all of the evidence in the record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029. When discussing mental health issues, the Ninth Circuit has stated:

[I]t is error to reject a claimant's testimony merely because symptoms wax

and wane in the course of treatment. Cycles of improvement and
debilitating symptoms are a common occurrent, and in such circumstances
it is error for an ALJ to pick out a few isolated instances of improvement
over a period of months or years and to treat them as a basis for concluding
a claimant is capable of working.

*Garrison*, 759 F.3d at 1017-18.

Here, the ALJ found that Petitioner's medically determinable impairments could
reasonably be expected to cause the alleged symptoms, but that Petitioner's statements
concerning the intensity, persistence, and limiting effects of these symptoms were not
entirely consistent with the medical evidence and other evidence in the record. (AR 20.)
The ALJ discredited Petitioner's psychological symptom testimony as inconsistent with
the record, examination findings, and Petitioner's daily activities. (AR 21.)

The Court does not necessarily disagree with the ALJ's reasoning or conclusion
concerning Petitioner's symptom statements. However, for the reasons discussed
elsewhere in this decision, the ALJ should reevaluate Petitioner's symptom statements on
remand after reassessing the medical opinion testimony and lay witness statement.

### 3.      Lay Witness Statement

Following the hearing and only days before the ALJ issued his decision, counsel
for Petitioner submitted a letter requesting the ALJ to consider a written statement from
Petitioner's father, Cecil Groner. (AR 32.) Petitioner argues the ALJ erred by failing to
consider the lay witness statement from Petitioner's father in his decision. (Dkt. 21 at 20)
(Dkt. 23 at 10.) Respondent does not address this argument. (Dkt. 22.)

As a general matter, a SSA claimant is free to submit evidence at any time before
the ALJ renders a decision. 20 C.F.R. § 404.1512 ("In general, you have to prove to us

that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process....”). The ALJ has a duty to consider all the evidence before him or her, including post-hearing evidence. *Simmons v. Comm'r Soc. Sec. Admin.*, No. 5:16-cv-20-Oc-PRL, 2017 WL 192369, at *3 (M.D. Fl. Jan. 18, 2017) (“[W]hen a claimant submits post-hearing evidence before the ALJ renders a decision, the ALJ is under a duty to consider that evidence.”).

Lay testimony about a claimant's disability is competent evidence that the ALJ must consider. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Such testimony cannot be discounted unless the ALJ gives reasons that are germane to that witness. *Carmickle*, 533 F.3d at 1164; *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill,* 12 F.3d at 919); *Lewis*, 236 F.3d at 511. Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12. Where the ALJ fails “to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.” *Stout*, 454 F.3d at 1056.

The ALJ's decision does not address Mr. Groner's statement. However, it is possible Mr. Groner's statement was not received before the ALJ issued his decision. (AR 13, 32) (the letter containing Mr. Groner's statement is dated Thursday, July 26,

2018 and the AJL's decision is dated Tuesday, July 31, 2018.) If Mr. Groner's statement was timely submitted and received prior to the decision being issued, the ALJ had a duty to consider the statement and explain why Mr. Groner's testimony did not alter his conclusion. *Bruce*, 557 F.3d at 1115.

It is unknown to the Court whether the ALJ received Mr. Groner's statement prior to issuing his decision. Moreover, the Court cannot determine whether any harmful error occurred here because the statement of Petitioner's father is not contained in the current administrative record.[6] The ALJ should therefore address this issue on remand.

### 4.   Step Three and Step Five

Petitioner argues that the ALJ erred at step three and step five of the sequential analysis. (Dkt. 21.) At step three, the ALJ found that Petitioner's impairments did not meet or equal the criteria of Listings 12.04, 12.05, 12.06, and 12.08. (AR 16.) At step five, the burden shifted to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). The ALJ determined Petitioner could perform the requirements of representative occupations such as production assembler, cafeteria attendant, and bottle packer. (AR 24-

---

[6] It appears from the transcript of the ALJ hearing that Mr. Groner's statement may concern Petitioner's attempt at work as a caregiver for her mother. (AR 38-39, 52-56, 75-78.) Petitioner testified regarding that subject and there are other records addressing the same. Without having Mr. Groner's statement before it, however, the Court cannot determine whether the statement would have changed the disability determination.

25.)

Petitioner contends the ALJ's findings at both step three and step five are erroneously based on the improper rejection of the medical source opinions of Drs. Genthe and Alexander. (Dkt. 21, 23.) For reasons discussed above, the ALJ's assessment of the medical opinion evidence are insufficient and necessitate remand. The Court, therefore, will not address the ALJ's findings at step three and step five as they are dependent upon resolution of the remanded issues. The ALJ should reassess steps three and five on remand.

**5.     Remand**

Petitioner asks the Court to remand for an award of benefits on the basis of the present record. However, the Court concludes the record as a whole contains ambiguities and important factual issues that require resolution. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). There is evidence in the record indicating the severity of Petitioner's impairments are properly assessed as moderate limitations, and that Petitioner is capable of performing light, unskilled work with limited social interactions as set forth in the ALJ's RFC determination. For example, Dr. Genthe found that Petitioner's depression did not cause "clinically significant emotional distress or impairment in functioning," her "psychological symptoms do not appear to have considerably impacted her daily activities and level of functioning necessary to move forward and pursue gainful employment," and that Petitioner can "perform best on tasks

that are relatively simple, repetitive and do not demand cognitive flexibility." (AR 411, 413.) Further, Petitioner expressed enjoyment and a desire to work in statements made to treatment providers and in her testimony. There are also other records indicating Petitioner's treatment history and daily activities may support the ALJ's RFC assessment. Accordingly, the proper approach is to remand the matter to the agency.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Petitioner's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: November 16, 2020

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER -** 24